of the Board of Immigration Appeals summary affirmance without opinion of the immigration judge's order denying his motion to reopen and request that the court, the alternative request that the court corresponds to reopen the proceedings. The immigration in denying that motion in the alternative request made two fundamental errors. First, the immigration judge grossly erred in attributing another individual's criminal record to the petitioner. His criminal record included two drug convictions, one which was the drug trafficking conviction that qualifies as an aggravated felony. The board did not correct this gross error. Instead, the board affirmed without opinion the judge's decision. This court has clarified in the paramissami that the very integrity of the judicial process is dependent upon the board correcting such gross errors by the immigration court. Apart from that error, and it's especially important given that the motion to reopen and the discretionary response to request to reopen are discretionary decisions. And so when the immigration judge denies the discretionary, this request, saying he doesn't merit that discretionary relief, it directly plays upon the fact that the immigration judge also relied on another individual's criminal record. Apart from that, the immigration judge made a fundamental error when she stated that the court did not have jurisdiction to grant the motion to reopen because he had already been deported. While there is a regulation that prohibits a court from entertaining a motion to reopen once a person has been deported, this Court has a long line of cases acknowledging that either the prior statutory bar or now, now that there's no longer a statutory bar, the regulatory bars should not be given effect or the order of deportation or the order of removal was unlawful. Now, the government argues that he should not avail himself of this line of authority given that he unlawfully reentered the country. But the government relies upon the cases they cite that first states this proposition. Hernandez-Almanza recognizes an exception even for those persons who unlawfully reenter if there was a gross miscarriage of justice. And in this case, Petitioner is contending there was a gross miscarriage of justice. When he appeared in the removal proceedings before the immigration judge, he was detained by the government. Not only was he unrepresented, but he suffered from and continues to suffer from chronic paranoid schizophrenia. In the custody of the government, the government was giving him the medication that he required on a daily basis and the other medical treatment. Yet when he was brought before the immigration court, there were no precautions taken as to whether he was mentally competent to appear. This was in direct violation of the governing regulation. 8 CFR 1240.10C prohibits the immigration judge from accepting an admission of removability from a mentally incompetent individual unless that person is represented or accompanied by a parent or legal guardian. In this case, Petitioner appeared without representation, and he was clearly in a state where he was mentally and is mentally incompetent. And yet he proceeded there. In this case, Petitioner is contending that the immigration judge was not present  Kennedy, do you think that the immigration judge was present at the immigration  I'm talking about the immigration court. You said that the immigration court --- The initial deportation order, not the reinstatement order, right? I'm talking about the initial --- I thought we agreed that that was a matter on habeas for the district court. That is true with respect to the first petition for review challenging the reinstatement order. But what I'm saying is that he also has a valid second petition for review that challenges the motion to reopen. That motion to reopen was denied in error, as was the alternative request to Esponti. And therefore, that motion to reopen should also be remanded to the board to address those errors. Not only was he denied the motion to reopen, the alternative request to reopen to Esponti was denied in error. Now, the immigration judge pursuant to the regulation has the authority upon his or her own motion at any time to reopen or reconsider her decision, unless that jurisdiction is vested with the board. And case law has laid out that where there's a significant change in the law or exceptional circumstances, that it is an opportunity for the court to utilize the sua sponte authority to reopen proceedings. Now, petitioner acknowledges that this court in Akeemian v. INS has recognized that, in general, there is no review of the sua sponte decision to reopen proceedings. However, this court has also clarified in Hernandez v. Ashcroft that the immigration court, nor the board, may utilize their discretionary authority as a shield for unlawful conduct. The board does not have the authority to exercise discretion in violation of the law. Were the board or the immigration court in this instance acted directly in violation of the law, in blatant violation of the law, by utilizing another individual's criminal record and relying on that in their discretionary decision, and in falsely asserting that he – that the court did not have the jurisdiction to entertain the motion, this court can and should review the unlawful conduct on that denial of the request to Esponti. Is that under case law or is that under the statute or the regulations? What's your authority for giving us jurisdiction? So the – I'd say under case law, that Hernandez v. Ashcroft specifically states that the board does not have the discretion to act in violation of the law, because in that case, the government asserted that the court didn't have jurisdiction to review the discretionary decision. And so under case law, this court has clarified that while in general a discretionary there's no review available. If the discretion was clearly used in violation of the law, there is review before this court. Like I said, the other – the other point about the motion to reopen is that it is clear previously there was a statutory bar that prohibited persons from filing a motion to reopen if they had been deported. But even when there was a statutory bar, this court affirmed that a person could still file a motion to reopen in the case of Mendez v. INS. This court could – a person could still file a motion to reopen where the deportation was in contravention of the law. There's no longer that statutory bar. Now the only thing that remains is the regulatory bar. But likewise, the courts have recognized that where the deportation or the order of removal is in contravention of the law, the individual – the court still retains jurisdiction to file the motion to reopen. In summary, Petitioner asserts this Court has the authority to grant his petition for review of the reinstatement order, given that the reinstatement regulation is ultra-virus. Failing that, of course, the Court could transfer this case to district court on habeas. But this Court also should grant his petition for review of the denial of the board's affirmance without opinion of the immigration's denial of his motion to reopen. Because the immigration judge's order was in blatant violation of the law, and the Board of Immigration Appeals failed to review that and said – instead, they put the rubber stamp on it and affirmed it without opinion, failing to even address the fact that the immigration judge had pasted another individual's criminal record on their decision. Thank you, counsel. Thank you. May it please the Court? I'm Susan Hauser, appearing for the Attorney General. Would you please speak into the microphone? I won't go over what we discussed in the previous case as to the ultra-virus argument, but I do want to mention that – or stress that there's a fundamental way that reinstatement differs from 240 deportation proceedings, which is that there are just three very limited factual questions to be decided in the reinstatement context, as set out in the statute. So under the plain language of the statute, with this very narrow degree of looking at these three facts, it doesn't make sense to interpret the statute as requiring an entire hearing with an immigration judge. What about an application for waiver? Well, again, that's not allowed under the reinstatement statute itself. It is by the express language of the statute. It's restricted to these three factual questions, and nothing else can be examined. So even if you had a hearing before an immigration judge, it would be restricted to these three things. And this Court has already found in Arreola has accepted the general principle of reinstatement and found that it did not violate due process. And another reason for giving deference to the government's regulation was discussed at some length in our brief with the legislative history, and that was also addressed in the LaTaube case of the First Circuit that was mentioned in discussing the previous case. Now, there's an additional issue in this particular case as to why the Court should not rule that there's on the issue of whether the regs are ultra-virus. And that is because in this case, the Petitioner admitted all three of these factual issues. Page 9 of the brief, the Petitioner admits that he is the alien identified in the removal order, that he was removed, and that almost immediately after he was removed, he came back in the United States illegally. So what the Petitioner is actually asking the Court to do is to render an advisory opinion, because there is no case or controversy here on any of the three narrow factual issues that are allowed. Well, what would you say if in the first case, where whatever the merits of the claim, they are contesting some of the three factors? Suppose in that case we were to say that the regulation is invalid. What would we do in this case? Well, I don't feel comfortable speaking as to that case. No, no, I'm not asking you whether we would be correct. I'm saying suppose we rule first in the first case, write an opinion, and say the regulation is invalid. Then it was applied in this case. He didn't receive the hearing before an immigration judge he's entitled to. I'm not asking you to agree with any of that. Just say assume that's the case. And then your case comes up. And you say, well, he didn't have a hearing before a judge, and the regulation is invalid. What do we do? So what you're asking me is if there were a theoretical case in the future after you had held that a hearing was required? If we postpone your argument for a week, and in the week we decide the prior case and say the regulation is invalid, and now you're up here arguing your case, and we've decided the regulation's invalid, everybody who's getting a reinstatement order is entitled to appear before a judge. Well, if the court ordered that, then we would have to give them a hearing. Am I misunderstanding your question? No, just trying to figure out the practical effect of various alternatives, I think. Well, that's one of the strongest arguments in favor of considering the legislative history. As Congress very clearly pointed out. All I'm really saying is I understand your argument that we shouldn't decide that the regulation's invalid in your case. It's not a good one to test the issue. Correct. All right. I agree with you about that. All right. Well, you know, the problem with all this, though, let's assume for the sake of argument I mean, I just want to make sure that I understand your position. Let's say that the government sent a removal order against me. I'm a United States citizen born here. And sent it to the wrong address. And then somebody went and they said, well, you're removable in absentia. And then we go down the road and I leave the country, I come back, and they say, well, you see, we've got this, you know, I'm traveling abroad. Go down to Mexico for the day or something, come back. And I say, well, no, here's a reinstatement. You can't challenge. You know, you're prohibited from a hearing. Isn't that where we are in this case? I mean, isn't that the way it plays out, that you can have a completely invalid initial removability or order of removal that's facially just completely wrong, and then there is no remedy if a hearing is not afforded, right? I mean, that's the government's position. I know that's the extreme case, but isn't that where you are? Well, the remedy is for the underlying proceeding. Yeah, but if you do it in absentia, there's no hearing, right? And they say, well, it's a last known address. He was there in college, right? So that's what we have. Well, there are statutory provisions for remedying when a person has an in absentia hearing due to lack of notice. You can move to reopen at any time. One thing that is required in order for reinstatement is that the person has to come back into the country illegally. Right, but if I'm removed and I leave the country, I'm coming back illegally, even though it's just complete, the factual predicate is, and I know this is an absurd case in a sense, but the problem is if you don't give somebody a hearing that supports a due process at any stage of this, you do allow for this kind of thing to happen. Well, also, you do have an immigration officer who listens to what the person has to say. He can't do anything about the prior order. No. He has only had it through three issues. What? Are you an alien? Were you deported? And did you enter in violation of any kind of an order, any kind of law? Well, it sounds like that would be a due process objection, and the Court's already held that reinstatement doesn't violate due process. Okay. So that's the way it plays out in your view? Yes. There's no remedy for me if I'm wrongfully removed at the reinstatement stage? Well, I don't quite follow your hypothetical. I don't see where there would be any miscarriage of justice there. If a person has an absentia hearing, as I said, there's a very generous statutory provision for correcting that. Right, but you don't find out about it if it's an absentia until, in fact, you're detained. And at that point, it's reinstated and you're sent away. I mean, the motion to reopen at that point is sort of a illusory remedy, isn't it? You're saying you didn't know about the first hearing, but you have a right to cure that, but that's only if you know about it. Well, let's take a hypothetical of somebody who is in the country illegally and a notice appears issued to them, and they don't receive it. So then they're ordered removed in absentia. Then they leave the country. Right. They had no right to be here in the first place. So they leave the country, then the order removal is effected. Then they come back into the country illegally. I fail to see how there's any possible violation of due process. What I'm saying is they're here illegally to begin with, but they are, in fact, the subject of a wrongful removal order in absentia. They leave the country. They come back. They say, no, I want to contest the underlying order. And they say, no, no, no, no, no. We sent you out in absentia. There's no hearing. You're entitled to a hearing. Let's say it's a contest about somebody who overstays an H-1B visa, okay? And he says, no, no, I didn't. It's an extension. And so, well, no, we've got a removal order. You can't come back in the country. This is a reinstatement. You're gone for five years, ten years, right? Well, in most cases, when you have some sort of status and you leave the country and you're out of the country, you forfeit your status anyway. So it's hard for me to imagine any set of circumstances where that would apply. Leaving the country has consequences, as does an illegal reentry. I'm trying. You can travel on an H-1B back to your home country for a short period of time. For a short period of time. Sure. I'm just saying, you're starting from the factual predicate that the INS never makes any errors or the Department of Homeland Security never makes any errors. But it happens. And my question is, how do we correct that? We correct that with a hearing. Well, any procedure can be subject to error. People get put in jail for crimes they didn't commit and so forth and so on. I don't think the job of the court is to decide whether a statute passed by Congress is susceptible to any possible one-in-a-million type situation that might be unfair. I wasn't going to argue that. I was just actually asking what I thought the logical extension of your argument was. And I think you and I probably agree with that. And whether Congress intended that is for us to decide. Yes, because this Court's already held on that issue of due process. The reinstatement does not violate due process. If there's a hearing in the first instance. Well, and also looking at the government has very strong interest in the reinstatement procedure. Because without it, aliens can come back time and time again. An alien could be here 100 percent of the time, except for maybe one or two days every year. Yeah. So that's very strong government equity, which I think Congress probably considered and decided that that outweighed this kind of one-in-a-million possibility of a person who might be deported in absentia and then not realize it and then try to come back into the country while still in status. Deported or removed in absentia happens all the time. And people say they didn't get notice of it and they could have contested it. I'm just saying that I don't think we're disagreeing on much. Yeah. Okay. All right. Well, thank you very much. Thank you. If there's nothing further, the case just argued will be submitted. The next case on the calendar is submitted without argument. That's Ferreira. The next case for argument is Repesa Wong v. Ashcroft.
judges: D Nelson, Reinhardt, Thomas